EN EL TRIBUNAL SUPREMO DE PUERTO RICO

## CARATULA ENMENDADA

| Miriam B. Otero Prann<br>Demandante-peticionaria<br><br>v.<br><br>Javier Delbrey Rivera<br>Demandado-recurrido | Certiorari<br><br>98TSPR2 |
|---|---|

Número del Caso: CC-95-110 y CC-96-24

Abogados Parte Demandante-peticionaria: Lcda. Olga Longoria Velez

Abogados Parte Demandada-recurrida: Lcda. Beatriz Vazquez de Acaron

Abogados Parte Interventora:

Tribunal de Instancia:  N/A

Juez del Tribunal de Primera Instancia:  N/A

Tribunal de Circuito de Apelaciones: Circuito Regional de Bayamon

**Caso Num. CC-95-110**      12 de septiembre de 1995
Juez Ponente:               Hon. Charles A. Cordero

**Caso Num. CC-96-24**       17 de enero de 1996
Jueza Ponente:              Hon. Jeannette Ramos Buonomo

Fecha: 1/22/1998

Materia: Divorcio (Trato Cruel)

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

MIRIAM B. OTERO PRANN

    Demandante-Peticionaria

        vs.                           CC-95-110        CERTIORARI
                                     Cons. CC-96-24

JAVIER DELBREY RIVERA

    Demandado-Recurrido

Opinión del Tribunal, emitida por el Juez Asociado señor Fuster Berlingeri.

San Juan, Puerto Rico, a 22 de enero de 1998.

I.

Tenemos la ocasión para interpretar el alcance de la Regla 32.1 de Procedimiento Civil, y para resolver si nuestro dictamen en Pueblo v. Arocho Soto,[1] en adelante Arocho Soto, sobre la evaluación mental de víctimas de abuso sexual, es aplicable en un procedimiento civil que involucra a menores de edad.

II

Ambos recursos ante nos surgen de los procedimientos en el pleito de divorcio entre Miriam Otero Prann y Javier Delbrey Rivera.

---

[1] Op. de 29 de diciembre de 1994, 137 D.P.R. ___, 94 JTS 159.

Otero y Delbrey contrajeron nupcias el 18 de enero de 1986. Procrearon dos hijos, la menor C.D.O. y el menor J.D.O., quienes al momento de presentarse la demanda de divorcio contaban con cinco (5) y tres años y medio (3½) de edad, respectivamente.

El 27 de julio de 1993, Otero presentó ante el antiguo Tribunal Superior de Puerto Rico, Sala de Bayamón, la demanda aludida contra su esposo.  Adujo trato cruel hacia ella, y que el demandado había incurrido en actos de abuso sexual contra los hijos del matrimonio. Otero solicitó que se decretara el divorcio entre las partes, que se le concediera la patria potestad y la custodia de sus hijos, y que se le prohibieran las relaciones paterno-filiales a Delbrey.  Este contestó la demanda oportunamente.  Negó cada una de las alegaciones de trato cruel, y a su vez presentó una reconvención por la misma causal.

Iniciado el trámite de divorcio, los menores, hijos del matrimonio, comenzaron a recibir atención del Departamento de Servicios Sociales, y del Programa Biosicosocial del Hospital Pediátrico Universitario del Recinto de Ciencias Médicas.  En el Departamento de Servicios Sociales, los menores fueron entrevistados clínicamente respecto a las alegaciones de abuso sexual, por la Dra. Doris González de Knudson, mientras que en el Programa Biosicosocial los niños fueron evaluados por la psicóloga, Dra. Haydeé De Jesús, y el psiquiatra de niños, Dr. Jorge Montilla, además de ser entrevistados por funcionarios del grupo multidisciplinario que allí labora.  Por su parte, el tribunal de instancia ordenó que los niños fueran evaluados por el psicólogo del tribunal, Dr. Hilario De La Iglesia y entrevistados por su trabajadora social, Estela Rivas Nina.

En octubre de 1993, estando pendiente el caso de divorcio, se presentaron dos cargos criminales contra Delbrey, por el delito de actos lascivos o impúdicos contra su hija C.D.O., lo que tuvo el efecto de paralizar el descubrimiento de prueba del caso civil. El 9 de noviembre de 1994, luego de celebrado juicio penal ante tribunal de derecho, el

Tribunal Superior, Sala de Bayamón, declaró a dicho acusado no culpable de los cargos imputados. Absolvió al acusado por tener duda razonable respecto a su culpabilidad.

El 14 de noviembre de 1994 se reactivó el caso civil de divorcio, celebrándose ese día una vista sobre estado del caso, en la cual los representantes legales del demandado Delbrey anunciaron la prueba testifical que se proponían utilizar en el juicio. Esta incluía el testimonio del perito de Delbrey, Dr. José H. Rodríguez, quien previamente había evaluado a la menor C.D.O. y había sido llamado como perito de la defensa durante el procedimiento criminal referido. Anunciaron además los testimonios del Dr. Hilario De La Iglesia y de Estela Rivas.

El 30 de noviembre de 1994, los representantes legales de Delbrey presentaron una moción solicitando renuncia de representación legal, que fue declarada con lugar el 12 de diciembre de 1994.

El 14 de diciembre de 1994 se celebró otra vista sobre el estado del caso, en la cual la nueva representación legal de Delbrey solicitó, entre otras cosas, la suspensión del juicio señalado para febrero de 1995. Pidió también que se le autorizara descubrimiento de prueba; que se concedieran relaciones paterno-filiales; y que se permitiese la contratación de un nuevo perito para evaluar a los menores. El tribunal de instancia declaró con lugar todas las solicitudes del demandado, con la objeción reiterada de la demandante.

Mediante moción del 25 de enero de 1995, el demandado informó, entre otras cosas, que se estaban coordinando las fechas para las evaluaciones de los menores por su nueva perito, la psicóloga Dra. Carol Romey. En una vista celebrada el 10 de febrero de 1995, se discutió el plan del demandado para someter a sus hijos a evaluación por su nueva perito. La demandante volvió a oponerse a esta nueva evaluación. Ante los planteamientos de las partes, el tribunal de instancia decidió que los peritos de las partes debían reunirse con el perito de la defensora

judicial de los menores, Lcda. Annie Franco Carmona, Procuradora Especial de Relaciones de Familia, para discutir la conveniencia de una nueva evaluación. El tribunal estableció que de llegarse a un acuerdo entre las partes sobre una evaluación, ésta se efectuaría en conjunto, entre la perito del demandado y el perito de la defensora judicial.

Posteriormente, el demandado, por recomendación de su perito, presentó una moción oponiéndose a la evaluación conjunta de los menores. Por su parte, la demandante volvió a oponerse a una nueva evaluación de los menores.

El 26 de mayo de 1995 se celebró una vista sobre el estado de los procedimientos, ante un nuevo juez al cual se le había asignado el caso. Luego de una extensa reunión en cámara con las partes y sus respectivos abogados, el tribunal de instancia resolvió en corte abierta, entre otras cosas, permitirle a la nueva perito del demandado volver a evaluar a los menores. Así lo notificó mediante la minuta dictada ese día y transcrita el 31 de mayo de 1995.

Inconforme con la determinación del tribunal de instancia de permitir la nueva evaluación de los menores aludida, el 14 de junio de 1995 Otero presentó un recurso de certiorari y una moción urgente en auxilio de jurisdicción ante el Tribunal de Circuito de Apelaciones, Circuito Regional II de Bayamón, solicitando que se dejara sin efecto la referida orden del 26 de mayo de 1995. En dicho recurso, Otero adujo que la Regla 32.1 de las de Procedimiento Civil sobre examen mental no aplicaba a los hijos menores de las partes, por no estar en controversia su estado mental; que al caso de autos aplicaba lo resuelto por este Tribunal en Pueblo v. Arocho Soto, Op. de 29 de diciembre de 1994, 137 D.P.R. ___, 94 JTS 159; y que los menores ya habían sido evaluados por un perito del demandado.

El 14 de junio de 1995, el Tribunal de Circuito notificó una orden, mediante la cual dejaba sin efecto las evaluaciones de los menores

pautadas para el 27 de junio de aquel año, mientras consideraba el recurso de Otero.

El 12 de septiembre de 1995, el Tribunal de Circuito dictó sentencia y desestimó el recurso de certiorari presentado por la demandante. Autorizó la nueva evaluación psicológica de los menores por la nueva perito del demandado.

A. El recurso de Otero

Por estar en desacuerdo con la sentencia del Tribunal de Circuito antes referida, Otero acudió ante nos, el 13 de octubre de 1995, mediante solicitud de certiorari y adujo la comisión de los siguientes errores:

A. Erró el Honorable Tribunal de Circuito de Apelaciones al resolver que el fundamento de la demandante para solicitar se revocara la Orden emitida por el Tribunal de Instancia de fecha 26 de mayo de 1995 estriba en que los niños no son parte del pleito de divorcio y por ende no puede ordenarse su evaluación.

B. Erró el Honorable Tribunal de Circuito al resolver que la norma sentada por este Ilustre Foro en el caso de Pueblo v. Arocho Soto, 94 JTS 159, sobre la obligación de demostrar una clara necesidad para someter a una víctima de abuso sexual a pruebas psicológicas no es de aplicación al campo de lo civil por estar expresamente autorizado en la Regla 32.1 de Procedimiento Civil tal examen.

C. Erró el Honorable Tribunal de Circuito al resolver que aplica a este caso lo resuelto por este Honorable Tribunal Supremo en el caso Pueblo v. Canino Ortiz, 93 JTS 157, pero no aplica el caso de Pueblo v. Arocho Soto, supra, por tratarse de un caso en el campo de lo criminal.

D. Erró el Honorable Tribunal de Circuito al resolver que existe en este caso de parte del padre una clara necesidad para dicho examen, fundamentada la misma en que la demandante en su Informe de Conferencia Preliminar Entre Abogados del 12 de diciembre de 1994 señaló diecinueve (19) testigos y tres (3) peritos lo que constituye clara necesidad para que el demandado también pueda tener prueba pericial, lo que a su vez se reforzó con el hecho de que el Departamento de Servicios Sociales y el Programa Biosicosocial levantaron el privilegio de no divulgar información apoyándose en disposiciones de ley, a pesar de señalar en su Sentencia mediante nota al calce, que quaere si procede en casos civiles una demostración de clara necesidad.

E. Erró el Honorable Tribunal de Circuito al resolver que la evaluación psicológica no causa que los niños puedan sufrir tan angustioso trauma emocional, máxime cuando se pueden balancear los intereses adversos asegurándose el Tribunal de Instancia

que dicho examen sea en la hora y lugar que sean menos lesivos para los menores.

El mismo día la recurrente Otero presentó una moción en auxilio de jurisdicción solicitando que paralizáramos las evaluaciones psicológicas de los menores que ya estaban pautadas.

El 13 de octubre de 1995, emitimos una resolución, y ordenamos la paralización de los procedimientos relativos a la evaluación de los menores por la nueva perito de Delbrey. Le concedimos a éste un término de treinta (30) días para que compareciera y mostrara causa, si alguna tuviese, por la cual no debíamos revocar la sentencia del Tribunal de Circuito de Apelaciones en cuestión. **En particular, le solicitamos al demandado-recurrido que expresara por qué las evaluaciones, a las cuales ya habían sido sometidos los menores por parte de un perito suyo, por los peritos de las entidades gubernamentales concernidas, y por los del Tribunal, no eran ya suficientes para los fines del pleito pendiente.**

B. <u>El recurso de Delbrey</u>

Con posterioridad a que el Tribunal de Circuito emitiera la referida sentencia del 12 de septiembre de 1995, pero antes de que se presentara ante nos el recurso de certiorari referente a la nueva evaluación de los menores, el tribunal de instancia pasó juicio sobre el informe de conferencia preliminar entre abogados y sobre una "moción de desestimación de alegación de causal de divorcio por impedimento colateral por  sentencias de absolución" presentada por el demandado. En la referida moción, el demandado adujo que por haber sido absuelto en el procedimiento criminal llevado contra él por los actos de abuso sexual imputados, la demandante estaba impedida de relitigar en el caso civil las alegaciones de abuso sexual planteadas en la demanda de divorcio. El tribunal de instancia, <u>sin dar explicación alguna</u>, dictó una orden el 26 de septiembre de 1995 y declaró con lugar la moción del demandado. Desestimó la alegación sobre abuso sexual como parte de la

causal de trato cruel para el divorcio.   El tribunal de instancia resolvió, además, que como las partes podían divorciarse por la causal de separación[2] y/o la de trato cruel, sin tener que pasar prueba sobre abuso sexual, no era necesario usar a la hija menor C.D.O., o a la demandante, como testigos.   Con relación al informe de conferencia preliminar, el tribunal de instancia dictó una orden, el mismo 26 de septiembre de 1995, y lo aprobó  en su totalidad, excepto que eliminó como testigo en el juicio a la menor C.D.O., la cual figuraba en la lista de testigos de la demandante, y a la defensora judicial, la cual figuraba en la lista del demandado.[3]

Inconforme con las referidas órdenes, la demandante acudió una vez más en certiorari ante el Tribunal de Circuito de Apelaciones.   Con el beneficio de la comparecencia de las partes y habiendo celebrado vista oral, el Tribunal de Circuito expidió el auto y dictó sentencia, el 17 de enero de 1996, revocando las referidas órdenes del tribunal de primera instancia.[4]   El Tribunal de Circuito resolvió que según el

---

[2] El 5 de junio de 1995 el demandado había presentado una moción solicitando autorización  para enmendar las alegaciones a los fines de incluir en la contestación a la demanda y en la reconvención la causal adicional de separación para el divorcio.  A pesar de la objeción de la parte demandante, el tribunal de instancia aprobó la reconvención enmendada el 12 de septiembre de 1995.

[3] El 19 de septiembre de 1995 la defensora judicial de los menores había presentado una moción en oposición a llamar como testigo a la menor C.D.O., en la cual argumentó que se había presentado un informe de conferencia preliminar en el que la demandante anunció como testigo a  la menor C.D.O., que la menor declaró en el procedimiento criminal llevado contra el demandado en tres distintas ocasiones, y que el tribunal de instancia podía entrevistar a la menor y a su hermano a solas para conocer la versión de éstos sobre los hechos.  El 27 de septiembre de 1995 la demandante ripostó mediante moción, aduciendo que tenía derecho a desfilar toda la prueba testifical con que contaba para probar su caso, que el testimonio de la menor resultaba crucial para probar sus alegaciones, y que el derecho a presentar prueba está consagrado y protegido por el debido procedimiento de ley garantizado en la Constitución.  El 28 de septiembre de 1995 el demandado presentó escrito, en el cual alegó que no se debía permitir la declaración de la menor para la conveniencia de un adulto, basándose en que se afectaría más a la menor.  Añadió además que tampoco debía permitirse la entrevista a solas en cámara, porque se violaría el debido procedimiento de ley del demandado.

[4] La referida solicitud de certiorari de Otero fue consolidada por el Tribunal de Circuito con otro recurso de certiorari presentado por

derecho aplicable, la sentencia de absolución en el caso criminal presentado contra el demandado, no constituía impedimento colateral que impidiese la presentación en el caso de divorcio por la causal de trato cruel, de prueba sobre el alegado abuso sexual de los menores.  En cuanto al testimonio de la menor, el Tribunal de Circuito resolvió que este era imprescindible para poder probar la alegación sobre abuso sexual, y por lo tanto, que el tribunal de instancia había errado al no permitirlo.

En esta ocasión, fue el demandado Delbrey Rivera, quien inconforme con la sentencia del Tribunal de Circuito del 17 de enero de 1996 presentó ante nos el 29 de enero de 1996, una petición de certiorari. En dicho recurso, el recurrente hizo los siguientes señalamientos de error:

A.  Erró el Honorable Tribunal al resolver que el Tribunal de Primera Instancia erró al desestimar la alegación de abuso sexual como causal para el divorcio por trato cruel y por ende, la demandante tiene derecho a presentar su prueba sobre el alegado abuso sexual de los menores por parte del demandado.

B.  Erró el Honorable Tribunal de Circuito de Apelaciones al resolver que la menor C. D. O. podrá declarar en el juicio, como testigo de la parte demandante, revocando con ello la Resolución del Honorable Tribunal de Primera Instancia, Sala Superior de Bayamón.

C.  Erró el Honorable Tribunal de Circuito de Apelaciones al adjudicar el proceso decisional del Honorable Tribunal de Primera Instancia, Sala Superior de Bayamón.

El recurrente Delbrey acompañó su recurso con una moción en auxilio de jurisdicción en la cual nos solicitó que paralizáramos los procedimientos ante el tribunal de primera instancia, para impedir así el testimonio de la menor en el juicio que iba a comenzar el 29 de enero de 1996.  Además, el recurrente solicitó la consolidación de su recurso con el presentado anteriormente por Otero.

En atención a lo solicitado por la parte peticionaria, emitimos resolución el 29 de enero de 1996, ordenando la paralización del

---

Delbrey.  La intervención del Tribunal de Circuito con este último recurso no fue cuestionada en los recursos presentados ante nos.

testimonio de la menor C.D.O., ante el tribunal de primera instancia, Sala Superior de Bayamón, pautada para el 30 de enero de 1996, y concedimos un término de treinta (30) días a la parte recurrida, Otero Prann, para que expresara por qué no debíamos revocar la sentencia del 17 de enero de 1996 del Tribunal de Circuito de Apelaciones.

Así las cosas, el 29 de abril de 1997 Delbrey presentó ante nos una moción informativa.  En la misma nos informó que el 12 de marzo de 1997 el Tribunal de Circuito de Apelaciones, Circuito Regional II de Bayamón, dictó sentencia confirmatoria, hoy final y firme, de un decreto de divorcio emitido mediante sentencia parcial por el tribunal de instancia.  La referida sentencia parcial fue dictada el 25 de abril de 1996, ordenándose en esa fecha su registro y notificación.  En la misma, el tribunal de instancia decretó el divorcio de las partes por la causal de separación, dejando pendientes las determinaciones sobre patria potestad, sobre custodia y sobre las relaciones paterno-filiales.  En la referida sentencia parcial, el tribunal de instancia señaló además que su dictamen no impedía que se continuara con la prueba sobre el alegado abuso sexual para adjudicar los referidos asuntos pendientes.

Habiendo comparecido oportunamente las partes en ambos recursos, accedemos a su consolidación[5] y pasamos a resolverlos.


III.

En cuanto a la solicitud de certiorari de Otero, nos limitaremos a discutir los últimos cuatro señalamientos de error, ya que el primero evidentemente no es pertinente a la solución de las controversias

---

[5]  Ambos recursos de certiorari, presentados ante este Tribunal, contienen cuestiones comunes de hechos, y en ambos comparecen las mismas partes, planteando la comisión de errores por el Tribunal de Circuito en las sentencias recurridas  referentes al mismo procedimiento de divorcio y de determinaciones de custodia, patria potestad y relaciones paterno-filiales.  Se cumplen los requisitos para que proceda una solicitud de consolidación, establecidos en la Regla 38.1 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 38.1 y en Vives Vázquez v. E.L.A., op. de 17 de diciembre de 1996, 142 D.P.R. ___, 96 JTS 164.

planteadas. Por estar íntimamente relacionados los referidos cuatro errores, los discutiremos conjuntamente.

En esencia, la peticionaria plantea como error que el foro apelativo haya determinado que no aplica al campo de lo civil la norma sentada en Pueblo v. Arocho Soto, op. de 29 de diciembre de 1994, 137 D.P.R. ___, 94 JTS 159, sobre la obligación de demostrar una clara necesidad para someter a una víctima de abuso sexual a pruebas psicológicas. La peticionaria tiene razón. Veamos.

El examen físico y mental es un mecanismo útil de descubrimiento de prueba que está reconocido en nuestro ordenamiento procesal civil. En Bahr v. Am. Railroad Co., 61 D.P.R. 917 (1943), revocamos varias decisiones judiciales que sostenían que los tribunales carecían de autoridad para ordenar el examen físico de un demandante en una acción de daños y perjuicios. Resolvimos allí que nuestros tribunales tienen la facultad inherente y discrecional para ordenar dicho examen, y expresamos que al redactar las ya derogadas Reglas de Enjuiciamiento Civil de 1943, habíamos incluido entre éstas la Regla 35, que confería a los tribunales la facultad discrecional de ordenar a una parte que se someta a un examen físico o mental, cuando la condición física o mental de dicha parte estuviere en controversia.

Nuestra actual Regla 32.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 32.1, sobre el examen físico o mental de personas, dispone lo siguiente:

> En un pleito en el cual el estado mental o físico de una parte, incluyendo el grupo sanguíneo de ésta, estuviere en controversia, la sala ante la cual esté pendiente el pleito podrá ordenar a dicha parte que se someta a un examen físico o mental por un médico. Se podrá dictar la orden solamente mediante moción, previa notificación a la parte que hubiere de ser examinada y a todas las demás partes, y en ella se especificarán la fecha, hora, lugar, modo, condiciones y alcance del examen y el médico o médicos que habrán de hacerlo.

Como puede observarse, dicha Regla establece dos condiciones o límites substantivos para que el tribunal de instancia pueda ordenar un examen físico o mental debidamente solicitado: (1) el examen debe

referirse a una parte del pleito; y (2) tiene que estar en controversia el estado físico o mental de esa parte. En cuanto a la primera de estas dos condiciones, es evidente que bajo los términos de la Regla 32.1 no puede ordenarse el examen físico o mental de cualquier persona, sino sólo de una que sea parte en el pleito. No tiene que ser una parte adversa al promovente del examen, pero tiene que ser una persona que participa en la acción litigiosa como parte de ésta. Schlagenhauf v. Holder, 379 US 104, 115 (1964).

Respecto a la segunda condición, para que el examen pueda ordenarse, el promovente tiene que demostrarle al tribunal que existe una controversia legítima sobre el estado físico o mental de la persona cuyo examen se solicita. Las meras alegaciones no bastan. El promovente debe ofrecer datos y razonamientos que le permitan al foro a quo decidir que en efecto el examen debe ordenarse porque existe una disputa real sobre la condición física o mental de dicha parte. De otro modo, se crea el riesgo de que el mecanismo del examen físico o mental se convierta en un medio para el promovente hostigar a la parte en cuestión. Schlagenhauf v. Holder, supra, págs. 118-119.

A lo anterior debe añadirse que la facultad de los tribunales para ordenar un examen físico o mental no puede ser ejercida livianamente. Se trata de una facultad discrecional, que debe ejercerse sólo después de sopesar los efectos adversos que pueda tener la intromisión personal que representa dicho examen.

En Arocho Soto, supra, en el contexto de un proceso criminal, expresamos que el derecho de un acusado al descubrimiento de prueba está limitado cuando incide sobre el derecho a la intimidad de la víctima u otro testigo. Dijimos que el derecho a la intimidad y a la integridad personal precluyen el uso de exámenes o pruebas científicas por parte de un acusado, excepto cuando éste demuestre una clara necesidad para ello. Indicamos que debían sopesarse los intereses en conflicto, y que sólo procedía ordenarse el examen en cuestión si la necesidad de este era

mayor que el perjuicio que se causaba a la intimidad e integridad de la persona a ser evaluada.

Indicamos, además, en Arocho Soto, supra, a la pág. 554, que en varias jurisdicciones estatales se ha resuelto que los tribunales tienen discreción para ordenar o no ordenar las evaluaciones periciales de una víctima de abuso sexual, solicitadas por el acusado; pero que al ejercitar dicha discreción, los tribunales debían buscar un balance entre el derecho de un acusado a un juicio justo, y la intromisión con los intereses privados de la víctima. Arocho Soto, supra, citando a Moor v. State, 709 P.2d 498 (Alaska App. 1985); People v. Chard, 808 P.2d 351 (Colo. 1991). Reconocimos allí que la tendencia en la mayor parte de las jurisdicciones estatales, igual que en la federal, es a exigirle al acusado que demuestre una razón o necesidad clara para la evaluación pericial que interesa, antes de que ésta se ordene. Señalamos, que la naturaleza intimidante y embarazosa de un examen psicológico puede aumentar el trauma emocional que sufre la víctima; que puede tener el efecto, además, de llevar a la víctima a inhibirse de informar la comisión de delitos de abuso sexual en su contra; y que puede atemorizar de tal manera a la víctima que ésta llegue al punto de negarse a declarar en el juicio. Por estas razones, justificadamente se ha requerido que el acusado demuestre un interés en la evaluación de la víctima lo suficientemente importante como para justificar una invasión al derecho a la intimidad de la víctima en cuestión. Arocho Soto, supra, a la pág. 554. En dicha decisión, adoptamos en nuestra jurisdicción las referidas normas, de eminente razonabilidad, de los tribunales estatales aludidos, resaltando que en Puerto Rico, el derecho a la intimidad goza de especial protección, por su exaltado rango constitucional. Arocho Soto, supra, citando a E.L.A. v. Hermandad de Empleados, 104 D.P.R. 436 (1975); Figueroa Ferrer v. E.L.A., 107 D.P.R. 250 (1978); Colón v. Romero Barceló, 112 D.P.R. 573 (1982); Arroyo v.

Rattan Specialties Inc., 117 D.P.R. 35 (1986); Pueblo v. De León Martínez, op. de 16 de febrero de 1993, 132 D.P.R. ___, 93 J.T.S. 22.

Si en el contexto de un procedimiento penal, en el cual un acusado se enfrenta a una convicción criminal, y en el que se proveen las más amplias garantías procesales, hemos resuelto lo ya reseñado, con más razón debemos requerirlo a la parte que solicita someter a una alegada víctima de abuso sexual a una evaluación psicológica en un procedimiento civil. La política judicial de sopesar el interés de una parte en utilizar los mecanismos de descubrimiento de prueba a su alcance, con los efectos adversos de una intromisión con la vida privada y el bienestar de una alegada víctima de abuso sexual, ciertamente aplica en casos como el de autos, para regular la discreción del foro de instancia. Debe tenerse en cuenta, además, que tanto en Arocho Soto como en el caso de autos, las alegadas víctimas de abuso sexual eran menores de corta edad, cuyo bienestar emocional está revestido del más alto interés público. Por ello, para proteger a la alegada víctima de abuso sexual de sufrir daños emocionales adicionales al someterse a evaluaciones psicológicas que puedan ser innecesarias, extendemos la norma que sentamos en Arocho Soto, supra, a procedimientos civiles como los de autos, en que las alegadas víctimas eran menores de edad.

En este caso, aunque ni Otero ni los foros de instancia y apelativo lo han planteado o discutido, es claro que no puede ordenarse un examen mental de los menores bajo la Regla 32.1, debido a que éstos no son estrictamente partes en el pleito. No están nombrados en la acción litigiosa ante nos de forma alguna que permita considerar que son "partes" en ésta. No se cumple con uno de los requisitos de la Regla aludida.

Podría pensarse que como en el pleito de autos han de adjudicarse asuntos vitales relativos a los menores, como son la patria potestad, la custodia y las relaciones paterno-filiales, debería considerarse que los menores son "parte" en este pleito. O podría tomarse en cuenta que

aunque los menores no sean partes en el pleito, su evidente vinculación a éste justifica que se ordene su examen psicológico, al amparo de la facultad inherente que tienen los tribunales de tomar las medidas necesarias para asegurar que los casos ante sí sean adjudicados correctamente. Vease, Ortiz v. Peña, 108 D.P.R. 458 (1979); Lewin v. Jackson, 492 P 2d 406 (1972); Buffington v. Wood, 351 F 2d 292 (1965); Beach v. Beach, 114 F 2d 479 (1940); Cuevas Segarra, P.P.P. II, Procedimiento Civil, págs. 166-167 (1979).

No tenemos que resolver, sin embargo, los asuntos aludidos en el párrafo anterior; ni tampoco cuestionar si Delbrey planteó debidamene en instancia una controversia legítima sobre el estado mental de los menores, como también lo requiere la Regla 32.1, según señalado antes. Ello es así porque para resolver el asunto concreto ante nos basta con señalar que en este caso Delbrey no ha demostrado razón o justificación válida para que la menor tenga que ser evaluada psicológicamente de nuevo. Surge de la minuta de la vista del 14 de noviembre de 1994 ante el tribunal de primera instancia que los anteriores representantes legales de Delbrey expresaron que descansarían en el juicio en los informes periciales del Dr. José H. Rodríguez, del Dr. Hilario De La Iglesia y de la señora Estela Rivas, trabajadora social. Luego, la actual representación legal de Delbrey solicitó al tribunal de instancia que se nombrara un perito para evaluar nuevamente a los menores, sin justificar tal solicitud debidamente. El tribunal de instancia abusó de su discreción al emitir la orden autorizando la nueva evaluación psicológica de éstos, debido a que Delbrey no estableció la justificación necesaria para ello. No adujo hechos u otra evidencia que demostrara que la nueva evaluación psicológica era claramente necesaria, ni que los beneficios que obtendría sobrepasarían las consecuencias perjudiciales que ello pudiera ocasionarle a los menores, que han estado sometidos ya a un sinnúmero de evaluaciones periciales.[6][7] Ciertamente,

no se ha cumplido aquí con el requisito fijado en <u>Arocho Soto</u> para el examen psicológico de menores que alegadamente han sido víctimas de abuso sexual, que aplica también a casos como el de autos, conforme resolvimos antes.

En vista de lo ya señalado, procede que se revoque la sentencia del 12 de septiembre de 1995, dictada por el Tribunal de Circuito de Apelaciones, que confirmaba la autorización del tribunal de instancia para una nueva evaluación psicológica de los menores por la perito del demandado. Se ordenará al tribunal de instancia a continuar con los procedimientos en este caso, sin contar con la nueva evaluación psicológica de los menores por la nueva perito del demandado.


IV.

En cuanto a la petición de certiorari presentada por Delbrey, mediante la cual recurre de la sentencia del 17 de enero de 1996, dictada por el Tribunal de Circuito, no le asiste la razón a este peticionario. El Tribunal de Circuito no erró en su análisis. Veamos.

---

[6] En el informe de conferencia preliminar entre abogados fechado el 1ro de septiembre de 1995, y presentado el 8 de septiembre del mismo año, aparecen como peritos por la parte demandante, a saber, los doctores Doris Knudson, Haydée De Jesús, Jorge Montilla y Miguel Pagán. Por la parte demandada, aparecen como peritos, los doctores Carol Romey, Ruth Prevor, José Roberto Fumero, José H. Rodríguez, Hilario de la Iglesia. En su escrito en cumplimiento de orden de mostrar causa, Delbrey nos expresa que los doctores Fumero y Prevor sólo han intervenido con el compareciente, nunca con los niños. Sin embargo, aun sin la intervención de la Dra. Carol Romey como perito que evalúe los menores en este caso, Delbrey todavía cuenta con los doctores José H. Rodríguez e Hilario de la Iglesia como peritos en el mismo.

[7] En cuanto al fundamento del Tribunal de Circuito de que existe clara necesidad de parte del padre para la evaluación pericial porque el Departamento de Servicios Sociales y el Programa Biosicosocial levantaron el privilegio de no divulgar información sobre el presente caso apoyándose en disposiciones de ley, debemos señalar que Otero nos indica en su recurso que la defensora judicial, a nombre de los menores, renunció al privilegio que como víctimas tienen los niños bajo la Ley de Protección a Víctimas y Testigos, y autorizó tanto al Departamento de Servicios Sociales como al Programa Biosicosocial a ofrecer la información confidencial a las partes y al tribunal de instancia. Según la peticionaria, dicha renuncia fue aprobada por el tribunal de instancia y la prueba que obra en poder de dichas agencias fue ofrecida a las partes y se presentará ante el tribunal el día del juicio.

En lo pertinente, el peticionario aduce en esencia[8] que el Tribunal de Circuito erró al resolver que la menor C.D.O. podrá declarar en el juicio, como testigo de la parte demandante. Tal error no se cometió. Por el contrario, como bien señala el foro apelativo en la sentencia recurrida, en este caso es menester dilucidar a fondo la alegación de abuso sexual, para poder adjudicar las controversias pendientes sobre custodia, patria potestad y relaciones paterno-filiales. Por ello, es necesario el testimonio de la menor en corte abierta. No se trata aquí del típico caso de custodia, en el cual puede ser suficiente, que el juez de instancia entreviste, en cámara y a solas, a un menor para auscultar la preferencia de éste con base en sus sentimientos únicamente[9]; o en el cual dicha preferencia pueda ser comunicada al tribunal por otras vías, tales como el testimonio de uno de los padres u otros testigos, e informes periciales presentados al tribunal.[10] Se trata aquí de fundamentales determinaciones sobre custodia, patria potestad y relaciones paterno-filiales, que no pueden tomarse cabalmente, sin dilucidar a fondo los alegados hechos de abuso sexual de una menor, que han de ventilarse en un juicio plenario. No podemos privar a las partes y a sus representantes legales de conocer el testimonio de la menor, y de contrainterrogarla, ya que ello es de medular importancia para resolver adecuadamente los asuntos en

---

[8]El primer error planteado por el peticionario resulta académico, ya que el mismo trataba sobre el dictamen del Tribunal de Circuito revocando la orden del tribunal de instancia que había desestimado la alegación de abuso sexual como causal para el divorcio por trato cruel. Pero, como hemos señalado previamente, el 12 de marzo de 1997 el Tribunal de Circuito dictó sentencia confirmatoria, hoy final y firme, del decreto de divorcio, emitido el 25 de abril de 1996, mediante sentencia parcial por el tribunal de instancia. El tribunal de instancia decretó el divorcio de las partes por la causal de separación.

[9] Recuérdese que, la defensora judicial de los menores se opuso a que la menor testificase, mediante moción al respecto ante el tribunal de instancia, en la cual expresó que nada impedía al tribunal que entrevistase a solas a los menores, para conocer la versión de éstos y su parecer sobre los hechos.

[10] No obstante, no debe perderse de vista que la preferencia expresada por el menor es sólo uno de los factores a considerarse en la determinación de su custodia. Nudelman v. Ferrer Bolívar, 107 D.P.R. 495 (1978).

cuestión.[11]    Claro está, el foro de instancia debe ser muy cauteloso respecto al uso de la menor como testigo.  Debe velar por su bienestar, y tomar las medidas necesarias para proteger a la menor cuando ésta preste su testimonio.

Como el Tribunal de Circuito actuó correctamente al revocar la orden en cuestión del 26 de septiembre de 1995 dictada por el tribunal de instancia, debe confirmarse la sentencia recurrida del 17 de enero de 1996.

V

Por todo lo antes expuesto, se dictará sentencia, para revocar la del 12 de septiembre de 1995, dictada por el Tribunal de Circuito de Apelaciones, en cuanto confirmaba la autorización del tribunal de instancia para la evaluación psicológica de los menores por la nueva perito del demandado.  En su lugar, se ordenará al tribunal de instancia a continuar con los procedimientos en este caso, sin contar con la nueva evaluación psicológica de los menores por la perito del demandado.  Se confirmará además la sentencia del 17 de enero de 1996, emitida por el Tribunal de Circuito de Apelaciones, en cuanto se permite que la menor C.D.O. declare como testigo de la demandante en el juicio.


JAIME B. FUSTER BERLINGERI
JUEZ ASOCIADO

---

[11] Sobre todo, no debemos impedir u obstaculizar a la demandante en su obligación de presentar prueba para sostener sus alegaciones.  Asoc. Auténtica Empl. v. Mun. de Bayamón, 111 D.P.R. 520, 531 (1981).

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

MIRIAM B. OTERO PRANN

    Demandante-Peticionaria

        vs.                    CC-95-110       CERTIORARI
                             Cons. CC-96-24

JAVIER DELBREY RIVERA

    Demandado-Recurrido

SENTENCIA

En San Juan, Puerto Rico, a 15 de enero de 1998.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente sentencia, se revoca la del 12 de septiembre de 1995, dictada por el Tribunal de Circuito de Apelaciones, en cuanto confirmaba la autorización del tribunal de instancia para la evaluación psicológica de los menores por la nueva perito del demandado. En su lugar, se ordena al tribunal de instancia a continuar con los procedimientos en este caso, sin contar con la nueva evaluación psicológica de los menores por la perito del demandado. Se confirma además la sentencia del 17 de enero de 1996, emitida por el Tribunal de Circuito de Apelaciones, en cuanto se permite que la menor C.D.O. declare como testigo de la demandante en el juicio.

Lo pronunció, manda el Tribunal y certifica la señora Secretaria del Tribunal Supremo. El Juez Asociado señor Negrón García concurre con el resultado sin opinión escrita. El Juez Asociado señor Rebollo López emitió opinión concurrente.

Isabel Llompart Zeno
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Miriam B. Otero Prann

      Demandante-peticionaria

    v.                                            CC-95-110      CERTIORARI
                                                Cons. CC-96-24

Javier Delbrey Rivera

      Demandado-recurrido


Opinión concurrente emitida por el Juez Asociado SEÑOR REBOLLO LOPEZ

San Juan, Puerto Rico, a

Aun cuando concurrimos con la Opinión mayoritaria en cuanto a la determinación de que la menor C.D.O. no debe ser sometida a una <u>nueva</u> evaluación psicológica por la parte demandada, <u>no</u> podemos suscribir la adopción, para el ámbito civil, de la norma establecida en <u>Pueblo</u> v. <u>Arocho Soto</u>, Opinión y Sentencia de 29 de diciembre de 1994.[12]

I.

Como correctamente señala la Mayoría, para que

---

[12] En <u>Pueblo</u> v. <u>Arocho Soto</u>, *ante*, se estableció la norma de que el acusado tiene la obligación de probar una clara necesidad para que se pueda someter a una víctima de abuso sexual a pruebas psicológicas.

un tribunal de instancia pueda ordenar un examen físico o mental debidamente solicitado, al amparo de las disposiciones de la Regla 32.1 de Procedimiento Civil, es necesario que se cumplan dos condiciones: (1) el examen debe referirse a una parte en el pleito; y (2) tiene que estar en controversia el estado físico o mental de esa parte.

No siendo "parte" en el pleito la menor C.D.O., no procedía ordenar que ésta fuera examinada.  La actuación de la Mayoría, al concluir que una menor que no es parte en el pleito puede ser examinada, está en abierto desafío con la clara "intención legislativa" de la mencionada disposición reglamentaria.  Veamos.


II.

En 1943, la Legislatura adoptó las Reglas de Enjuiciamiento Civil, 32 L.P.R.A. Ap. I, que el Tribunal Supremo había promulgado basándose en las Reglas Federales de Procedimiento Civil de 1938.

La Regla 35(a) de las de Procedimiento Civil Federal de 1938, que regula las evaluaciones físicas o mentales como métodos de descubrimiento de prueba, originalmente disponía:

```
"Order for Examination. In an action in which the mental

or physical condition of a party is in controversy, the court

in which the action is pending may order him to submit to a

physical or mental examination by a physician. The order may

be made only on motion for good cause shown and upon notice

to the party to be examined and to all other parties and

shall specify the time, place, manner, conditions, and scope

of the examination and the person or persons to whom it is to

be made."
```

El texto de la citada regla federal fue incorporado a las Reglas de Enjuiciamiento Civil de 1943 en su Regla 35, 32 L.P.R.A. Ap. I, R. 35.

Posteriormente, las Reglas de Enjuiciamiento Civil de 1943 fueron derogadas y sustituidas por las Reglas de Procedimiento Civil de 1958.  De esta manera, la antigua Regla 35 se convirtió en la Regla 32.1 de Procedimiento Civil, 32 L.P.R.A. Ap. II, R.32.1.

En 1970, la Regla 35(a) de las Reglas Federales de Procedimiento Civil fue enmendada para incluir el análisis del grupo sanguíneo de una parte dentro de los exámenes permitidos en la etapa del descubrimiento de prueba y para permitir que tales exámenes se realicen a personas bajo la custodia o control legal de una de las partes en el pleito.[13]

---

[13]    El texto de la Regla 35(a) Federal, con posterioridad a las enmiendas del 1970, es el siguiente:

Por su parte, el legislador puertorriqueño adoptó en 1979 un nuevo cuerpo de Reglas de Procedimiento Civil.  En el mismo, incorporó a nuestra Regla 32.1 las pruebas de sangre como pruebas permisibles, tal y como había hecho la enmienda federal, pero no acogió la enmienda referente a que se permita someter a las pruebas médicas a personas bajo la custodia o control directo de alguna de las partes.[14]

Esta actuación del legislador claramente demuestra que en ningún momento tuvo la intención de, ni quiso, extender el descubrimiento de prueba, por medio de exámenes físicos o mentales, a personas que no fueran parte del proceso.  Esto es, la Asamblea Legislativa pudo haber adoptado la enmienda federal relativa a las personas bajo la custodia o control legal de las partes, al igual que hizo con la enmienda concerniente a los análisis del grupo sanguíneo; sin embargo, no lo hizo.

III.

La Opinión que hoy emite el Tribunal permite que, tras cumplir con el criterio de clara necesidad, se realicen exámenes físicos o mentales a personas que no son partes en el proceso; ello en clara contravención a la voluntad legislativa.

La controversia en el caso de autos debió haberse resuelto a base de la citada Regla 32.1, que es el precepto legal pertinente y aplicable

---

"Order for Examination.  *When* the mental or physical condition (*including the blood group)* of a party, *or of a person in the custody or under the legal control of a party*, is in controversy, the court in which the action is pending may order *the party* to submit to a physical or mental examination by a physician *or to produce for examination the person in his custody or legal control*.  The order may be made only on motion for good cause shown and upon notice to the *person* to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made."

(El texto en cursiva corresponde a las enmiendas introducidas en el 1970).

---

[14] También decidió el legislador eliminar el requisito de justa causa existente en las reglas vigentes en ese momento.

en el ámbito civil de nuestro ordenamiento jurídico. Resulta totalmente incorrecta la adopción, para el procedimiento civil, de la doctrina establecida para el procedimiento criminal en _Pueblo_ v. _Arocho Soto_, *ante*. Ello no pasa de ser un "embeleco" judicial más de la Mayoría de este Tribunal.  Dicho "embeleco" <u>no</u> toma en consideración, o pasa por alto, la clara diferencia existente entre el procedimiento civil y el procedimiento criminal y/o la principal razón para el establecimiento por este Tribunal de la norma en cuestión en _Pueblo_ v. _Arocho_, *ante*, cual es que en el ámbito penal está en juego la libertad de la persona.

FRANCISCO REBOLLO LOPEZ
Juez Asociado